## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **TODD PLACE,** : | |
| **Plaintiff** : | |
| : | **CIVIL ACTION NO. 1:04-2106** |
| **v.** : | |
| : | **(CALDWELL, D.J.)** |
| : | **(MANNION, M.J.)** |
| **COMMISSIONER OF SOCIAL** : | |
| **SECURITY ADMINISTRATION,** : | |
| : | |
| **Defendant** : | |
| : | |

## REPORT AND RECOMMENDATION

The record in this action has been reviewed pursuant to 42 U.S.C. §§ 405(g) and 1383( c)(3) to determine whether there is substantial evidence to support the Commissioner's decision denying the plaintiff's claims for Social Security Disability Insurance Benefits, ("DIB"), and Supplemental Security Income, ("SSI"), under Titles II and XVI of the Social Security Act, ("Act"). 42 U.S.C. §§ 401-433, 1381-1383f.

Based upon a review of the record, it is recommended that the plaintiff's appeal from the decision of the Commissioner of Social Security, (Doc. No. 1), be **DENIED**.

## I. Procedural Background

The plaintiff is an inmate at the State Correctional Institution at Houtzdale (Houtzdale). He filed his applications for Disability Insurance

Benefits and Supplemental Security Income Benefits on September 14, 2001. He alleged that he became disabled on April 5, 2001 due to depression, mental problems, drug and alcohol dependency and back pain. (TR. 13, 76, 99, 119).

After his claims were denied, the plaintiff's applications eventually came on for a hearing which was held at Houtzdale before an administrative law judge, ("ALJ"), on February 7, 2003. The plaintiff, proceeding *pro se*, stated at the hearing that he attempted to obtain counsel, but was unable to find counsel that would attend a hearing at Houtzdale. (TR. 14, 37). In addition to the plaintiff's testimony, the ALJ heard the testimony of Tanya Williams, a vocational expert (VE). (TR. 33-69).

On February 19, 2003, the ALJ issued a decision in which he found that Plaintiff met the disability insured status requirements of the Act on April 5, 2001, the date the claimant stated he became unable to work and he continued to meet them through June 30, 2002; the plaintiff had not engaged in substantial gainful activity since April 5, 2001; the medical evidence established that the plaintiff had severe bipolar disorder and intermittent explosive disorder, but that he does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Social Security Administration Regulations No. 4; the plaintiff's allegations as to his reduced residual functional capacity are not supported by the medical evidence of record and his allegations of audio and visual

2

hallucinations were specifically rebutted by the medical evidence, as was his allegation that he could not work due to time spent in counseling; the plaintiff had the residual functional capacity to perform work-related activities except that he was limited to simple, routine, repetitive, low-stress work activity within a stable work environment.  The plaintiff could not work with any interaction with the public or more than occasional interaction with co-workers (20 C.F.R. §§ 404.1545 and 416.945); the plaintiff's past relevant work as metallurgical production operator and cabinet assembler did not require the performance of work related activities precluded by the above limitations (20 C.F.R. §§ 404.1565 and 416.965); the plaintiff's impairments did not prevent the plaintiff from performing his past relevant work; and, thus, the plaintiff was not under a "disability," as defined in Act, at any time relevant herein. (20 C.F.R. §§ 404.1520(e) and 416.920(e)).  (TR. 18-19).

The plaintiff filed a request for review of the ALJ's decision. (TR. 7).  On July 23, 2004, the Appeals Council concluded that there was no basis upon which to grant his request for review. (TR. 4-6). Thus, the ALJ's decision stood as the final decision of the Commissioner.

Currently pending before the court is the plaintiff's appeal of the decision of the Commissioner of Social Security filed on September 9, 2004. (Doc. No. 1).

## II. Disability Determination Process

A five step process is required to determine if an applicant is disabled for purposes of social security disability insurance. The Commissioner must sequentially determine:  (1) whether the applicant is engaged in substantial gainful activity; (2) whether the applicant has a severe impairment; (3) whether the applicant's impairment meets or equals a listed impairment; (4) whether the applicant's impairment prevents the applicant from doing past relevant work; and (5) whether the applicant's impairment prevents the applicant from doing any other work.  See 20 C.F.R. §§ 404. 1520, 416.920.

The instant action was ultimately decided at the fourth step of the process, when the ALJ concluded that the plaintiff retained the capacity to perform his past work as a metallurgical production operator and cabinet assembler.  (TR. 18, 137).

At issue is whether substantial evidence supports the ALJ's determination.

## III.  Evidence of Record

The plaintiff was born on January 14, 1965 and at the time of his disability hearing decision, he was thirty-eight (38) years of age. (TR. 42, 99). The plaintiff has a high school education.  (TR. 55, 125).   His past relevant work history includes employment as a metallurgical production operator and cabinet assembler.  (TR.18, 137).

4

The record shows that the plaintiff filed prior applications for DIB and SSI on November 15, 1995. Those applications were denied by an ALJ's decision dated May 6, 1997. The Appeals Council denied Plaintiff's request for review of the ALJ's decision.  (TR. 13, 128). There is no evidence that the plaintiff took further action on those applications.

As stated above, plaintiff filed the application that is the subject matter of this appeal on September 14, 2001. The ALJ in the instant case found that the ALJ's decision in the prior application is administratively final and is not subject to reopening pursuant to the regulations.  (TR. 13).

On October 1, 2004, Plaintiff filed with this Court a Motion to Appoint Counsel to assist him in his application for DIB and SSI. (Doc. 4). On November 18, 2004, this Court denied Plaintiff's request for appointed counsel. (Doc. 14).

On October 12, 2004, the plaintiff applied to proceed *in forma pauperis* in the present action. (Doc. 8). This Court granted the plaintiff's request on October 18, 2004. (Doc. 10).

The medical evidence of record establishes that the plaintiff has a history of substance abuse disorder. In October of 2000 Plaintiff began treatment at Northern Tier Counseling (Northern Tier). Treatment notes reflect that plaintiff was agitated and complained of poor recent and remote memory. He reported a history of uncontrolled anger and that he had been physically

5

abusive to  his previous wife as well as to his present wife. The plaintiff also reported to Norther Tier a history of suicide attempts, helplessness, depression, and sleep irregularities. At the time, plaintiff was on probation for assault.  (TR. 191-193).

Northern Tier documented that the plaintiff did not have hallucinations or delusions. He was oriented in all three spheres, his intelligence was average, his insight and judgment were deemed fair but he lacked control of his impulses when angry.  (TR. 192).

Northern Tier diagnosed plaintiff with bipolar disorder and intermittent explosive disorder. Substance abuse was specifically ruled out.  (TR. 191). His Global Functioning Assessment (GAF) score was 60 which indicates moderate difficulties with social and occupational functioning. He was prescribed group therapy sessions.  (TR. 17).

Treatment notes from February 19, 2001, show that plaintiff was experiencing regression in his ability to deal with his outbursts of anger because he had only been "minimally compliant" with his prescribed treatment and had only attended counseling sessions four times in a four months period.  (TR. 190).

On June 11, 2001, Norther Tier documented that plaintiff was discharged from group therapy as of that date because he had been incarcerated again. (TR. 188).

Plaintiff reported that he was released from prison on September 5,

6

2001. After his release, plaintiff reported that he was receiving a $205.00 monthly cash benefits as well as food stamps from the Pennsylvania Department of Public Welfare (DPA). (TR. 195). Shortly after, on September 13, 2001, plaintiff began treatment with Mental Health Associates of North Central Pennsylvania (MHANCPA). (TR. 166).

On September 12, 2001, Joseph Cama, M.D., a family practitioner, filled a DPA Employability Form at plaintiff's request. Dr. Cama opined that the plaintiff was "temporarily disabled" for three months due to "schizo-affective disorder, bipolar disorder and depression." Dr. Cama based his assessment on "physical examination" of the plaintiff. (TR. 158, 165).

In a letter dated October 22, 2001, Rhonda Seamon, LSW, CAC, a licensed social worker with MHANCPA stated that plaintiff had started outpatient treatment at that institution on September 13, 2001. Ms. Seamon stated that plaintiff had been diagnosed with "poly-substance abuse dependence in remission." His treatment consisted of weekly group therapy sessions to prevent a relapse into alcohol and illegal substances abuse. (TR. 184).

Ms. Seamon further reported that plaintiff's substance abuse condition did not interfere with his ability to engage in substantial gainful activity and that his level of care did not interfere with his ability to work. (TR. 166). A year later, in a letter dated September 12, 2002, Ms. Seamon reiterated her opinion as discussed above and explained that they had stopped treating

7

plaintiff on October 24, 2001, because he had been incarcerated again. (TR. 184).

In his applications, plaintiff reported that prior to his present incarceration, he was able to take public transportation, pay bills, and cook meals in a microwave oven. He usually woke-up at 7:00 AM, took his medication and attended Alcoholic Anonymous (AA) and Narcotic Anonymous (NA) meetings. He visited the local library, was usually back home by 9:00 PM and went to sleep at around 11:00 PM. He stated that he stopped working because he had to take time off to attend counseling sessions and because he did not have reliable transportation.  (TR. 132).

Plaintiff reported that he had no problems interacting with other people, authority figures or family members, except for his wife. He attended family picnics and played games with his family once a week.  (TR. 133).  Plaintiff hobbies included playing guitar, watching movies and playing video games. (TR. 134).

At Houtzdale, plaintiff works at the prison kitchen eight hours a day with a two hours break. He writes letters twice per week and attends classes twice a week as well.

The record reflects that Plaintiff has a long history of arrests for assault and harassment. At the time of the hearing, plaintiff was serving a five year sentence for physical abuse to his wife.  (TR. 134).

Plaintiff was initially housed at the State Correctional Institution at

Camp-Hill (Camp-Hill). He reported that while at Camp Hill he was evaluated by "Dr. Newton" who prescribed him Zoloft, Lithium and Trazadone to help him deal with his "anxiety and depression." (TR. 147).  He also reported that he was prescribed Tylenol and Motrin for his complaints of headaches and back pain.  (TR. 148).

Plaintiff reported as well that he was evaluated by "Dr. Kahn" at Houtzdale who diagnosed him with bipolar disorder. (TR. 149). Dr. Kahn continued the same prescriptions prescribed by Dr. Newton but changed the Tylenol and Motrin for Naproxen.  (TR. 150).

In a Medical Source Statement, a state agency consultant opined that there was insufficient evidence in the record to issue an opinion as to whether or not the plaintiff had a medically determinable impairment. (TR. 167).

The Social Security Administration tried to obtain an independent medical evaluation (IME)  but was unable to find a physician willing to travel to a correctional facility to perform the examination.  (TR. 151).

At the administrative hearing, held on February 7, 2003, Plaintiff testified that he had been incarcerated since October of 2002. He said that his expected date of release was November 7, 2007. The Plaintiff stated that he would become eligible to be released on parole on November 7, 2003. (TR. 33). However, as of November 4, 2004, which is the date of plaintiff's last correspondence with this Court, plaintiff was still an inmate at Houtzdale. (Doc. 12).

The plaintiff testified that he is disabled due to "mental problems" consisting in "severe anxiety attacks."  (TR. 46). He stated that he had been diagnosed with a "schizo-affective disorder" which causes him auditory and visual hallucinations. (TR. 46-47). Plaintiff alleged that the hallucinations occur once or twice per week but only when he stops taking his medications. (TR. 47). Plaintiff testified that his visual hallucinations consist of "shadows" in the "corner" of his eyes which make him feel as if he was being stalked. (TR. 48). He also complained of lower back and legs pain.  (TR. 48).

Plaintiff stated that he hears voices telling him to hurt himself and that he had attempted suicide at some point in 1996 or 1997.  (TR. 47).  He stated that he feels depressed once or twice per month.  (TR. 49).  However, plaintiff stated that as long as he takes his medications regularly, he can "hold on pretty good." He has been provided with his prescribed medication at all times during his incarceration. (TR. 49). He consults with a psychiatrist, who manages his medications, once a month. (TR. 52). He also attends anger management and living skills classes as well as drug and alcohol abuse counseling.   (TR. 52). He stated that he sleeps well, thanks to his medications. (TR. 54).

Plaintiff testified that prior to his incarceration, he lived with his wife. He stated that he is still married and keeps in touch with his wife through letters and telephone conversations. However, he has not seen her in two years because she is incarcerated in a New York State Correctional Facility.  (TR.

10

51).

Plaintiff stated that, for the relevant time period preceding his incarceration, his daily activities consisted of watching television and "kind of hang out at the house." (TR. 53).

Plaintiff also testified that he works in the kitchen at Houtzdale. He reported that he works eight hour days with a two hours break. (TR. 43-44). However, since plaintiff only gets paid $32 per week for his work at the prison kitchen, the ALJ did not considered such work substantial gainful activity under the Act.  (TR. 44).

The VE testified that based on the exhibits and plaintiff's testimony, plaintiff's past work experience as a machine operator is considered unskilled work with a heavy exertional level. His past work experience as cabinet assembler was considered light, unskilled.  (TR. 59).

The ALJ asked the VE whether there were jobs in the economy that a hypothetical individual with plaintiff's age, education and work experience could perform. The ALJ added that the individual had no exertional limitations but was restricted to low stress, repetitive, routine tasks because his ability to concentrate was limited.   In addition, such person was limited to positions that required little contact with the general public and only occasional interaction with coworkers.  (TR. 60).

The VE responded that based on the above mentioned factors, the hypothetical person could perform the jobs of cabinet maker, assembler or

11

production worker, and production operator with metallurgical products. These are considered unskilled, low stress jobs. (TR. 61). The VE also added the jobs of landscape laborer, janitor, kitchen helper, tagger, assembler, and escort vehicle driver. All these jobs exist in significant numbers in the national, state and local economies.

## IV. Discussion

In his brief, plaintiff states that he is seeking review of the Commissioner's decision because "the Administrative Law Judge (ALJ) based his decision on faulty evidence, legal error, and ignored evidence, the Commissioner's denial of benefits should be reversed." (Doc. 12, p. 2).

The plaintiff further argues that the ALJ ignored his "social record consisting of numerous incarcerations, internments at Drug and Alcohol Dual diagnosis rehabilative (sic) centers, or his twice commitment in the [ ] behavioral [ ] center." (Doc. 12, p. 4).

Finally, plaintiff argues that the administrative hearing held on February 7, 2003, at Houtzdale "should be considered invalid" because he was denied "his right to counsel." (Doc. 12, p. 5).

The plaintiff argues that he is disabled because he has difficulty sustaining concentration. However, he indicated that prior to his incarceration, he spent his time playing guitar and video games. We agree with the ALJ's reasoning that plaintiff's ability to engage in these two past-

12

times is evidence of his capacity to sustain attention for long periods of time. Nevertheless, and giving plaintiff the benefit of the doubt, the ALJ limited the plaintiff to low stress work activity limited to simple, repetitive, routine tasks to accommodate his subjective complaints of lack of concentration.  (TR. 15).

Plaintiff stated that he became unable to work on April 5, 2001. However, the evidence of record indicates that he was dismissed from his last job on that date due to attendance issues and not because of symptoms of a disabling impairment.  (TR. 119).  Plaintiff reported that at his last job, he was able to lift and carry 25-50 pounds.  (TR. 120).

Plaintiff stated as well that he had stopped working on April of 2001 because he had to take time off to attend counseling sessions and because he did not have reliable transportation.  (TR. 132).  However, as stated above, in her report, Ms. Seamon specifically stated that the counseling sessions did not interfere with plaintiff's  ability to work.  (TR.184). Further, Northern Tier records reflect that plaintiff had not been compliant with his prescribed treatment.  (TR. 190).  Failure to follow prescribed treatment, absent good cause, will result in a finding of not disabled. 20 C.F.R. §§ 404.1530, 416.930 (2004). (Doc. 28, p. 9). Thus, we agree with the ALJ's finding that the plaintiff had stopped working on April 5, 2001, but not as a result of any physical or mental impairments.

Further, there is no indication that plaintiff had any episodes of decompensation or that an increase in mental demands or a change in his

13

environment would result in decompensation. We agree with the ALJ's reasoning that if Plaintiff had been at risk to decompensate due to a change in his environment, his incarceration would have involved at least some increase in symptoms. (TR. 16). However, in his testimony, the plaintiff conceded that he sees a therapist and a psychiatrist at Houtzdale to help him deal with his anxiety and depression and that his medications are provided to him. He also conceded that as long as he is on his medications he feels "pretty good." (TR. 49).

Aside from the plaintiff's testimony at the hearing, which the ALJ found to be less than credible, there is no objective medical evidence to support the plaintiff's alleged episodes of hallucination or severe anxiety attacks. (TR. 16). Additionally, treatment notes from Norther Tier specifically negate plaintiff's allegations of hallucinatory episodes. (TR. 192).

After careful review of the record, we also agree with the ALJ's determination that although the plaintiff's job at the prison kitchen is not considered substantial gainful activity, it is evidence of the plaintiff's capacity to engage in work-like activities for a prolonged period of time. (TR. 16).

The ALJ further explained that while the plaintiff had intermittent episodes of uncontrolled anger in the past, he has had no difficulties getting along with guards, medical personnel or the other prison inmates. (TR. 15). Prior to his incarceration, the plaintiff was able to interact with others, take public transportation and participate in family outings.

14

As stated above, except for his wife, the plaintiff reported that he had no problems interacting with others. Therefore, substantial evidence supports the ALJ's finding that the plaintiff's alleged mental illness is a severe impairment but it does not render him disabled as defined in the Act.

Plaintiff's final argument is that his constitutional right to counsel was violated because no counsel was appointed to represent him at the administrative hearing held in Houtzdale. This argument is without merit for the reasons stated on this Court's order dated November 18, 2004 denying Plaintiff's request for appointed counsel. (Doc. 14). Plaintiff was advised of his right to retain counsel to represent him at the administrative hearing. He testified that he had been allowed to contact an attorneys' referral service but was unable to find an attorney who would travel to the correctional institution to attend the hearing. (TR. 36).

## V.  Conclusion

On the basis of the foregoing, it is recommended that the plaintiff's appeal of the decision of the Commissioner, (Doc. No. 1), be **DENIE**D.

s/Malachy E. Mannion

**MALACHY E. MANNION**
**United States Magistrate Judge**

**Dated:** September 2, 2005

O:\shared\REPORTS\2004 Reports\04-2106.wpd